**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF MISSISSIPPI**
**OXFORD DIVISION**

**NICHOLAS SERVICES, LLC**
**D/B/A NICHOLAS AIR and**
**CORR FLIGHT S., INC.**                                          **PLAINTIFFS**

**VERSUS**                               Civil Action No. 3:23-cv-448-MPM-RP

**GLASSDOOR LLC, and**
**JOHN AND JANE DOE(S) 1-30**                              **DEFENDANTS**

<u>**PLAINTIFFS' MEMORANDUM IN SUPPORT OF RESPONSE IN OPPOSITION TO**</u>
<u>**GLASSDOOR LLC'S MOTION TO DISMISS, OR, IN THE ALTERNATIVE, TO**</u>
<u>**TRANSFER THIS ACTION TO THE NORTHERN DISTRICT OF CALIFORNIA**</u>

## INTRODUCTION

Glassdoor's business model is troublesome to say the least. It encourages disgruntled and toxic employees to spew hate and falsehoods about businesses on its website. Glassdoor then manipulates and monetizes the defamatory information, while simultaneously ignoring the fallout to impacted businesses and disclaiming any liability associated with its business model.

Glassdoor represents on its website that it "believes [employers] have a right to tell [their] side of the story." (*See* Ex. A to Pls' Response, Glassdoor Help Center). But that "right" to respond to negative and defamatory reviews only exists if employers agree to a boiler plate contract of adhesion to gain access to a "free employer account." Employers have even more of a "right" to clear their name if they pay Glassdoor for "branding services" that the employer never requested. In fact, Glassdoor advertises that if an employer pays for Glassdoor's "branding services" that the employer can utilize "featured reviews" that allow the employer to highlight the review that best represents their culture—which presumably allows an employer to promote positive reviews and bury negative reviews. (*See* Ex. B to Pls' Response, Glassdoor Premium Employer Products). "Featured reviews" are not available with a free account. *Id*. In other words, Glassdoor cultivates defamatory statements about companies on their website, thereby creating a problem for the company, and then offers a solution, for a fee, to the manufactured problem in the form of "branding services."

Nicholas Services, LLC d/b/a Nicholas Air ("Nicholas Air") and Corr Flight S., Inc. ("Corr Flight") (collectively referred to as "Plaintiffs") are two such businesses that have been impacted by Glassdoor's business model. Nicholas Air's employer profile on Glassdoor has numerous false, defamatory, hateful, malicious, discriminatory, confidential, proprietary, and/or fabricated reviews from alleged employees and/or previous employees. On May 19, 2021, after realizing that there were numerous defamatory reviews purporting to be from Nicholas Air employees on the

2

Glassdoor website, and without any other way to defend itself, Nicholas Air experimented with the advertised way to clear its name through "claiming" a Glassdoor-created employer account; even though Nicholas Air is not an employer. Glassdoor even reached out to Plaintiffs to respond to negative posts using the Glassdoor-created employer account. (*See* Ex. C to Pls' Response, Email from Glassdoor to Nicholas Air).

"Claiming" Nicholas Air's employer account required clicking a box to agree to Glassdoor's Terms of Service and Privacy Policy. Glassdoor prevents any company it deems an employer from viewing the totality of comments posted about its company, it prevents a company from verifying or denying the authentication of the author, and it will not allow a company to respond to comments unless the company agrees to Glassdoor's Terms of Service and Privacy Policy. Nicholas Air had no choice but to agree as it was the only option to defend itself from the baseless and defamatory allegations on Glassdoor's website. Nicholas Air has attempted to disclaim its Employer Profile, and has put in two requests to Glassdoor to do so, but has not received a response and has not been able to disclaim its Employer Profile to date.

To this day, Glassdoor continues to publish the unauthorized Nicholas Air employer page and the defamatory reviews. The decision to publish and continue publishing these reviews is tortious, and Glassdoor should not be allowed to avoid liability in this Court.

## ANALYSIS

### I.  THIS COURT HAS PERSONAL JURISDICTION OVER GLASSDOOR FOR PLAINTIFFS' CLAIMS.

#### A.  Legal Standard for Personal Jurisdiction

A federal court has personal jurisdiction over defendants if its exercise of jurisdiction satisfies the requirements of both the Mississippi long-arm statute and federal due process. *McFadin v. Gerber*, 587 F.3d 753, 759 (5th Cir. 2009). "On a motion to dismiss for lack of personal jurisdiction, the

plaintiff need only make a prima facie showing of jurisdiction." *PowerTrain, Inc. v. Ma*, 2012 WL 716888, at *2 (N.D. Miss. Feb. 27, 2012) (citation omitted). "The court must accept as true the nonmover's allegations and resolve all factual disputes in its favor." *Guidry v. U.S. Tobacco Co.*, 188 F.3d 619, 624 (5th Cir. 1999). This is a "relatively forgiving standard." *Andreacchio v. Yax*, 2021 WL 5442216, at *1 (S.D. Miss. Nov. 19, 2021).

B.     **Glassdoor's Conduct Satisfies the Mississippi Long-Arm Statute.**

Mississippi's long-arm statute consists of three prongs—the contract prong, the tort prong, and the "doing business" prong:

> Any nonresident . . . corporation . . . who shall **make a contract** with a resident of this state to be performed in whole or in part by any party in this state, or who shall **commit a tort** in whole or in part in this state against a resident or nonresident of this state, **_or_** who shall **do any business** or perform any character of work or service in this state, shall by such act or acts be deemed to be doing business in Mississippi and shall thereby be subjected to the jurisdiction of the courts of this state.

Miss. Code Ann. § 13–3–57 (emphasis supplied). As the Mississippi Supreme Court has noted, the Mississippi long-arm statute does not require a "nexus" between the Mississippi contact and the cause of action. *Estate of Jones v. Phillips ex rel. Phillips*, 992 So. 2d 1131, 1139 (Miss. 2008) ("The Legislature removed [the] 'nexus' requirement in 1991").

The long-arm statute as a whole is satisfied if just one prong is met.  Miss. Code Ann. § 13-3-57 (joining the three prongs with an "or").  Here, the long-arm reaches Glassdoor through both the tort and doing business prongs.[1]

---

[1] Glassdoor claims to have a contract with Nicholas Air, through its marketing coordinator. Nicholas Air disagrees that the purported contract is valid. However, under Glassdoor's theory, the contract prong of the Mississippi long-arm would be met as well.

**1.      Glassdoor has committed torts in Mississippi against Plaintiffs.**

"Under now well established law, Mississippi's long-arm statute contains no requirement that the part of the tort which causes the injury be committed in Mississippi. Rather, for purposes of our long-arm statute, a tort is committed in Mississippi when the injury results in this State." *Horne v. Mobile Area Water & Sewer Syst.*, 897 So. 2d 972, 977 (Miss. 2004) (citation omitted).

Glassdoor's tortious acts resulted in injury to Plaintiffs in Mississippi. (*See* Dkt. 13 at ¶¶ 1-2, 36, 43, 50).  The tort prong of the long-arm is therefore met.

**2.      Glassdoor does business in Mississippi.**

The long-arm statute separately provides "jurisdiction over a nonresident defendant who is 'doing business' in the state." *ITL Int'l, Inc. v. Constenla, S.A.*, 669 F.3d 493, 497 (5th Cir. 2012). "As it stands now, the long-arm statute, by its plain terms, applies to any person or corporation performing any character of work in this state." *Id.*  Under Mississippi law, "a nonresident defendant may be 'doing business' in Mississippi if 'he did various acts here for the purpose of realizing a pecuniary benefit or otherwise accomplishing an object.'" *Retail Coach v. r360, LLC*, 2017 WL 875831, at *3 (N.D. Miss. Mar. 3, 2017) (citations omitted).

Defendant argues it has no offices, employees, assets, or bank accounts in Mississippi, and does not have an agent for service of process, or a license to do business here. (Dkt. 23 at 7). However, these markers are not required by the long-arm statute.  In *Joshua Properties, LLC v. D1 Sports Holdings, LLC*, for example, the court found that the activities of the foreign defendant constituted doing business in Mississippi even though the entity was not registered to do business, did not hold a bank account in the state, and did not have an office in the state of Mississippi.  *Joshua Properties, LLC v. D1 Sports Holdings, LLC*, 130 So. 3d 1089 (Miss. 2014).

What Glassdoor does not do in Mississippi is beside the point, because what it *does* do is enough to qualify as doing business in the State. Glassdoor does business in Mississippi by creating company profiles for Mississippi businesses, which encompasses collecting, aggregating, and publishing reviews thereof, to advance Glassdoor's objectives and secure financial gain from Mississippi businesses. The doing business prong of the long-arm is met.

### C. The Exercise of Specific Personal Jurisdiction Over Glassdoor Comports with the Due Process Clause.[2]

The Due Process Clause of the Fourteenth Amendment allows personal jurisdiction over a defendant if it has "such contacts with the forum State that the maintenance of the suit is reasonable, in the context of our federal government, and does not offend traditional notions of fair play and substantial justice." *Ford Motor Co. v. Mont. Eighth Judicial Dist. Ct.*, 141 S. Ct. 1017, 1024 (2021) (citing *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316–17 (1945)) (internal quotation marks omitted). "To comport with due process, the defendant's conduct in connection with the forum state must be such that he should reasonably anticipate being haled into court in the forum state." *Latshaw v. Johnston*, 167 F.3d 208, 211 (5th Cir. 1999) (quoting *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980)) (internal quotation marks omitted).

"Specific jurisdiction exists when two circumstances are met: (1) a nonresident defendant has purposefully directed its activities at the forum state, and (2) the litigation results from alleged injuries that arise out of or relate to those activities." *Diece-Lisa Indus., Inc. v. Disney Enter., Inc.*, 943 F.3d 239, 250 (5th Cir. 2019) (citation and internal quotation marks omitted). When those requirements are established, the Fifth Circuit moves to a third prong determining whether "the exercise of personal jurisdiction is fair and reasonable." *Nuovo Pignone, SpA v. STORMAN ASIA M/V*, 310 F.3d 374, 378 (5th Cir. 2002) (abrogated on other grounds).

---

[2] Plaintiffs do not contend that Glassdoor is subject to general jurisdiction in Mississippi.

1.      **Glassdoor's content was purposefully directed at Mississippi.**

   a.      **Glassdoor's website is interactive and able to establish minimum contacts.**

When "a defendant's website is the claimed basis for specific jurisdiction vis-à-vis an intentional tort," the Fifth Circuit instructs courts to first apply the *Zippo* test to assess the website's interactivity. *Johnson v. TheHuffingtonPost.com, Inc.*, 21 F.4th 314, 318 (5th Cir. 2021) (citing *Revell v. Lidov*, 317 F.3d 467, 470 (5th Cir. 2002); *Zippo Mfg. Co. v. Zippo Dot Com, Inc.*, 952 F. Supp. 1119, 1124 (W.D. Pa. 1997)). *Zippo* interactivity is used to "determine whether a website can create sufficient minimum contacts" and "to measure a website's connection to a forum state." *Evans v. Huffington Post.com, Inc.*, 2022 WL 21320601, at *4 (S.D. Miss. Apr. 27, 2022). Under *Zippo*, "[i]f the site is passive – it just posts information that people can see – jurisdiction is unavailable, full stop." *Johnson*, 21 F.4th at 318. On the other hand, "if the website interacts with its visitors, sending *and* receiving information from them," it can create sufficient minimum contacts, and the court moves to the second prong of the due process analysis to determine whether the relatedness requirement is met. *See id.*

The threshold of interactivity for a website to create minimum contacts is not high. The Fifth Circuit held that a virtual bulletin board was interactive because it allowed users to send information by posting to the board and receive information by viewing the posts of others. *Revell*, 317 F.3d at 472. The Huffington Post's website has also been found to be interactive, because it allowed users to comment on articles and purchase merchandise through affiliates; required users to agree to its service terms; and collected data on its users. *Evans*, 2022 WL 21320601, at *4-5; *see also Johnson*, 21 F.4th at 319 (Fifth Circuit holding "HuffPost is interactive").

While Glassdoor contends that its "only contact with this state consists of the fact that the Site is accessible here," (Dkt. 23 at 13), it is clear that its website is interactive under the standards

of the Fifth Circuit. Upon visiting its site, www.glassdoor.com, the visitor is asked to provide his or her email address, job status, job title, location, and employer, before being admitted to the site. Further, the very purpose of Glassdoor's website is to collect, aggregate, and showcase information submitted to it by internet users. The website therefore can create the minimum contacts required by due process, and did so for purposes of Plaintiffs' claims.

> **b.** **Glassdoor's relevant content targeted Mississippi.**

In addition to the website's interactivity, the relevant content of Glassdoor's website was specifically targeted at Mississippi. The Fifth Circuit utilizes the effects test of *Calder v. Jones*, 465 U.S. 783 (1984), to determine whether a defendant's virtual contacts were purposefully targeted at the forum state. *See, e.g., Johnson*, 21 F.4th at 318. In *Calder*, the United States Supreme Court "held that California had jurisdiction over two nonresident defendants because the alleged libel discussed the California activities of a California resident and was drawn from California sources, and the brunt of the harm to the plaintiff was suffered in California." *Id.* (citation and internal quotation marks omitted).

Glassdoor tries to avoid this Court's jurisdiction by alleging Mississippi is not specifically mentioned in the reviews, or its rating system or questionnaire. (Dkt. 23 at 14). However, this is not true as at least three (3) of the reviews specifically indicate the location of the alleged employment as Oxford, Mississippi.[3] (Dkt. 13-1). Additionally, Glassdoor's argument relies on an unduly narrow reading of its cited cases, none of which involved the direct connections to the forum that are present here:

---

[3] In addition to the three (3) reviews that specifically mention Oxford, MS, one review indicates a location of Jackson, MS, and another indicates a location of Oxford, MI. These locations are erroneous and highlight the lack of Glassdoor's verification of the information it is publishing. Any alleged employment related to Corr Flight would have been in Oxford, MS; Nicholas Air is a brand, not an employer, and also has a primary business operation in Oxford, MS.

- The claims in *Evans* arose from a Huffington Post article about the plaintiff's alleged involvement in obtaining, in Maryland, cocaine that led to the overdose death of Senator Robert Kennedy's son, in Florida. 2022 WL 21320601, at *1, *5. In addition to not mentioning Mississippi, the court noted that the article did not refer to any Mississippi activities of the plaintiff, and that there were no facts indicating the source of the information was from Mississippi. *Id.* at *5.

- *Johnson* involved a Huffington Post story about a Washington, D.C. meeting between two congressmen and plaintiff, who was reported to be a "noted Holocaust denier and white nationalist." 21 F.4th at 316. The Fifth Circuit affirmed dismissal because the story had no tie to the forum state of Texas: it "recounts a meeting that took place outside Texas, and it used no Texan sources." *Id.* at 319.

- In *Revell*, an article posted to a virtual bulletin board alleged that the plaintiff, while serving in the Reagan administration as Associate Deputy Director of the FBI, had advance knowledge of a terrorist bombing of a Pan Am flight in Scotland, and had his son re-booked on a different flight. 317 F.3d at 469. The Fifth Circuit distinguished the case from *Calder* because, in addition to not referencing Texas, the forum state, it did not refer to any Texas activities of the plaintiff. *Id.* at 473.

The requirement that is evident in the above cases, which the Fifth Circuit has also specifically stated, is *not* that the forum state needs to be named (as Glassdoor suggests), but rather that "the sources relied upon and activities described in an allegedly defamatory publication should in some way connect with the forum if *Calder* is to be invoked." *Revell*, 317 F.3d at 473 (emphasis added).

Here, in direct contrast with Glassdoor's cited cases, and consistent with the Fifth Circuit's application of *Calder*, Mississippi is undoubtedly the focal point and target of Glassdoor's content. The relevant Glassdoor reviews discuss alleged Mississippi conduct of Mississippi residents (Plaintiffs and their employees) and were drawn from Mississippi sources (individuals who purportedly worked for Corr Flight in Mississippi). The brunt of the harm from the posts—the damage to Plaintiffs' reputations and images, negative impacts on hiring, lost opportunities, and economic harm—was also suffered by Plaintiffs in Mississippi. In addition, while the reviews could be viewed by individuals anywhere, they are in reality uniquely and especially targeted to Mississippians, whose residence would make them the most likely to view posts about employment at a Mississippi company.

The Fifth Circuit has stated that a defendant "must be chargeable with knowledge of the forum at which its conduct is directed in order to reasonably anticipate being haled into court in that forum[.]" *Revell*, 317 F.3d at 475. In *Revell*, this requirement was not met because defendant affirmed in an uncontroverted affidavit that he was not even aware the plaintiff was a resident of the forum state when he posted his article. *Id.* Glassdoor can claim no such ignorance. Its profile of Nicholas Air specifies that the company is based in Oxford, Mississippi. Glassdoor could therefore reasonably anticipate being haled into court here.

By operating an interactive website and publishing the relevant content, Glassdoor purposefully directed its activities at Mississippi, and the first requirement for due process is met.

### 2. Plaintiffs' claims relate to and arise from Glassdoor's Mississippi contacts.

Under the second prong of the due process analysis, a plaintiff's claims must "arise out of or relate to the defendant's contacts with the forum." *Ford*, 141 S. Ct. at 1026. While a direct causal relationship between the forum contact and the injury is not required, *id.*, in this case, it is

10

present. Plaintiffs' claims directly relate to and arise from the false and defamatory reviews of Nicholas Air that constitute the Mississippi contacts of Glassdoor.

### 3. Personal jurisdiction over Glassdoor is fair and reasonable.

The burden is on the defendant to make a "compelling case" that traditional notions of fair play and substantial justice would be violated by the exercise of jurisdiction. *Nuovo Pignone*, 310 F.3d at 382. Here, far from meeting their burden, Glassdoor did not present *any* argument on this third prong; it has therefore been waived. *Farani v. File*, 2021 WL 4497486, at *2 (S.D. Miss. Sept. 30, 2021) ("The general rule in the Fifth Circuit is that arguments raised for the first time in a reply brief are waived.").

Even if the Court engaged in an analysis of the third prong, its requirements are easily met. "If a nonresident has minimum contacts with a forum, rarely will the exercise of jurisdiction over the nonresident not comport with traditional notions of fair play and substantial justice." *DeJoria v. Maghreb Petroleum Expl., S.A.*, 804 F.3d 373, 388 (5th Cir. 2015). Most often, "the interests of the plaintiff and the forum in the exercise of jurisdiction will justify even the serious burdens placed on the alien defendant." *In re Chinese Manufactured Drywall Prods. Liab. Litig.*, 742 F.3d 576, 592 (5th Cir. 2014) (citation omitted). Defendant has not and cannot provide any evidence that this Court's exercise of personal jurisdiction over it would offend the traditional notions of fair play and substantial justice, and therefore this prong is met.

Each requirement of the Mississippi long-arm statute and federal due process are met, and this Court may, and should, exercise personal jurisdiction over Glassdoor for Plaintiffs' claims.

## II. THE TERMS OF USE ARE UNENFORCEABLE AGAINST NICHOLAS AIR AND CORR FLIGHT.

Glassdoor insists that this action must be adjudicated in a court on the other side of the country, despite its tortious actions committed here in Oxford, Mississippi. However, Glassdoor

has but a single argument for transfer to the Northern District of California that rests entirely on a forum-selection clause buried in a contract of adhesion that Glassdoor required Nicholas Air to accept. Notably, the only benefit Nicholas Air received was access to the defamatory content being posted about its company, and an opportunity to defend itself and improve its Glassdoor reputation if it paid Glassdoor for its services—but there was no payment rendered and no services performed. As shown below, the Terms of Use ("TOU") for Glassdoor's website should not be enforced. But even if this Court did enforce the TOU, they are only relevant to Nicholas Air. Corr Flight is a stranger to the "agreement" between Nicholas Air and Glassdoor and the terms thereof cannot be enforced against a non-signatory.

### A. The Forum-Selection Clause is Unconscionable, and Therefore Unenforceable.

The Court should not enforce the forum-selection clause in the TOU, and this case should not be transferred to another jurisdiction. Courts in the Fifth Circuit apply a three-step test to decide the application of a forum-selection clause: they determine (1) whether the forum-selection clause is mandatory or permissive, whether it is valid, and whether the parties' dispute falls within the scope of the clause; (2) whether the clause is enforceable; and (3) whether extraordinary circumstances weigh against transfer. *Davis v. Meta Platforms, Inc.*, 2023 WL 4670491, at *9 (E.D. Tex. July 20, 2023).

 Glassdoor fails on the second step because the forum-selection clause is itself unconscionable and not enforceable. The TOU, and the forum-selection clause, were procured on a take-it-or-leave-it basis. Nicholas Air had no choice but to agree to the forum-selection clause in order to defend itself on Glassdoor's website. Without assent to the boiler plate forum-selection clause, Nicholas Air was not allowed to *see* all of the defamatory comments on the employer page

that Glassdoor created without Nicholas Air's consent—let alone respond to the defamatory comments. (Dkt. 13, ¶ 19).

Involuntariness alone is enough to show unconscionability if "(1) there is a great imbalance in the parties' relative bargaining power; (2) the stronger party's terms are unnegotiable; and (3) the weaker party is prevented by market factors, timing or other pressures from being able to contract with another party on more favorable terms or to refrain from contracting at all." *Dalon v. Ruleville Nursing & Rehabilitation Ctr., LLC*, 161 F. Supp. 3d 406, 417 (N.D. Miss. 2016) (internal quotations omitted); *see also Mount Carmel Ministries v. Seaway Ban & Trust Co.*, 2015 WL 13375901, at *2 (S.D. Miss. Sept. 2, 2015) ("A forum-selection clause is 'unconscionable only where the stronger party's terms are unnegotiable and the weaker party is prevented by market facts, timing or other pressures from not being able to contract with another party on more favorable terms or refrain from contracting at all.'").

The forum-selection clause at issue is the definition of unconscionable—the terms were unnegotiable; Glassdoor created the defamatory problem for Nicholas Air and refused to let Nicholas Air respond to the defamation until Nicholas Air accepted the forum-selection clause; and Nicholas Air could not contract with another party because Glassdoor controls the defamatory statements on its websites. Nicholas Air had no option but to accept the forum-selection clause. The Court should not enforce a forum-selection clause that was procured under these circumstances. *See Walker v. Nautilus, Inc.*, 541 F. Supp. 3d 836, 843 (S.D. Ohio 2021) (terms of use for app were procedurally unconscionable when contract was one of adhesion).

### B.    Corr Flight is Not Bound by the Forum-Selection Clause.

Corr Flight is a stranger to the alleged contract between Nicholas Air and Glassdoor. So even if this Court finds that the TOU are enforceable against Nicholas Air, they cannot be

enforceable against Corr Flight. Glassdoor attempts to shoehorn Corr Flight into the TOU agreement under two theories: direct-benefit estoppel and agency. Both theories, however, are inapplicable to this case.

### 1. Corr Flight Received No Benefit From the TOU.

The Fifth Circuit will apply terms of a contract to non-signatories only in "rare circumstances." *Bridas S.A.P.I.C. v. Gov. of Turkmenistan*, 345 F.3d 347, 358 (5th Cir. 2003). One circumstance is direct-benefit estoppel, which "involve[s] non-signatories who, during the life of the contract, have embraced the contract despite their non-signatory status but then, during litigation, attempt to repudiate [portions of] the contract." *Hellenic Inv. Fund v. Det Norske Veritas*, 464 F.3d 514, 517–18 (5th Cir. 2006) (citation omitted). There are only two ways to establish direct benefit estoppel—(1) knowingly seeking and obtaining benefits from the contract or (2) seeking to enforce the contract or asserting claims that can only be adjudicated by reference to the contract. *Noble Drilling Servs., Inc. v. Certex USA, Inc.*, 620 F.3d 469, 472 (5th Cir. 2010).

Direct-benefit estoppel does not apply because Corr Flight did not benefit in any way from the TOU or seek to enforce any provision of the TOU. The only argument Glassdoor can make is that if the Court *assumes* that Corr Flight employees engaged with Glassdoor's website on behalf of Nicholas Air, then it can *assume* Corr Flight somehow benefited. (Dkt. 23 at 12). This argument requires the Court to assume several things, and there is no evidence that Corr Flight embraced or benefited from an agreement signed by Nicholas Air. On the contrary, Corr Flight has been harmed by the defamatory reviews.

Moreover, Corr Flight is not suing to enforce the TOU. Even if the TOU were enforceable, which Plaintiffs dispute, the TOU are irrelevant to Plaintiffs' claims because their claims against Glassdoor would exist irrespective of the TOU. *See Noble Drilling Servs.*, 620 F.3d at 474–75

14

(declining to apply direct-benefit estoppel when plaintiff's claims could be determined without reference to the agreements). It is unnecessary to reference the TOU to determine whether Glassdoor has engaged in tortious actions.

> ### 2. There is No Evidence that Nicholas Air Acted as Corr Flight's Agent in Relation to the TOU.

Nicholas Air was not acting as an agent for Corr Flight when it accepted the free employer page on Glassdoor's website. Glassdoor's position on this issue is neither supported by law nor facts, as evidenced by Glassdoor's sparse argument and single citation to an out-of-circuit opinion. (Dkt. 23 at 12–13).

Glassdoor has the burden to prove that Nicholas Air signed the TOU as an agent for Corr Flight. *See Bridas S.A.P.I.C.*, 345 F.3d at 356 (party seeking to enforce provisions bears burden to establish agency relationship on behalf of non-signatory). Normally, "[p]arties are presumed to be contracting for themselves only." *Id*. at 362 (citing *Fleetwood Enterprises, Inc. v. Gaskamp*, 280 F.3d 1069, 1075–76 (5th Cir. 2002)). "Agency is 'the fiduciary relation which results from the manifestation of consent by one person to another that the other shall act on his behalf and subject to his control, and consent by the other so to act." *Id*. at 356–57 (quoting Restatement (Second) of Agency § 1(1) (1958)). An agency relationship may be demonstrated through actual authority or apparent authority. *Id*. at 357.

Glassdoor has not explained how Nicholas Air had actual or apparent authority to act on behalf of and legally bind Corr Flight to the TOU. Nicholas Air is a separate legal entity from Corr Flight, which is demonstrated by Glassdoor's own exhibit reflecting Nicholas Services, LLC's annual report with the Secretary of State. (*See* Dkt. 22-2 at 3–5). As entities are presumed to only be acting on their own behalf, it was incumbent on Glassdoor to make it clear on the face of the agreement that Nicholas Air was signing on behalf of another party. *Bridas S.A.P.I.C.*, 345

15

F.3d at 357 ("Had [appellant] truly felt that [signatory] was signing the agreement not for itself but on behalf of the [non-signatory], it had the obligation to make the fact clear on the face of the agreement.").

The case cited by Glassdoor is inapposite. *See OSU Pathology Servs., LLC v. Aetna Health, Inc.*, 2011WL 1691830, at 12–13 (S.D. Ohio May 4, 2011) (binding non-signatory when contract explicitly stated signatory was binding non-signatory in same medical group). Further, a conclusory statement that one party is acting as another's agent is insufficient. *Ace Am. Ins. Co. v. Huntsman Corp.*, 255 F.R.D. 179, 194 (S.D. Tex. 2008). Glassdoor's baseless assertions are not enough to create an agency relationship between Nicholas Air and Corr Flight.

## C. The Public Interest Factors Do Not Weigh in Favor of Transfer.

If the Court determines that the forum-selection clause is enforceable against one or both of the Plaintiffs, transfer is still not appropriate under the 28 U.S.C. § 1404(a) public interest factors. The statute provides that "[f]or the convenience of the parties and witnesses, in the interest of justice, a district court may transfer a civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." 28 U.S.C. § 1404(a).

The Supreme Court has stated that a contractually valid forum-selection clause alters the § 1404 analysis such that a court need only consider the public-interest factors.[4]  *Atlantic Marine Const. Co. v. U.S. Dist. Ct.*, 571 U.S. 49, 63–64 (2013). "The public-interest factors are: '(1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case;

---

[4] The Supreme Court reiterated that its analysis presumed a *contractually valid forum-selection clause*. *Atlantic Marine*, 571 U.S. at 63, fn. 5. Plaintiffs dispute that there is such a valid clause at play in this litigation, and the Court need not reach this phase of Glassdoor's argument if it agrees.

and (4) the avoidance of unnecessary problems of conflict of laws or in the application of foreign law.'" *Wofford v. Protective Ins. Co.*, 2023 WL 7305044, at *2 (N.D. Miss. Nov. 6, 2023) (quoting *In re Volkswagen of America, Inc.*, 545 F.3d 304, 315 (5th Cir. 2008) (en banc)).

With regard to the first factor, the available data shows that this Court is less congested than the Northern District of California. According to the most recent Judicial Caseload Profile for the Northern District of Mississippi, this Court had Two Hundred Ninety-Eight (298) pending cases per judge, as of June 2020, and only just over two (2) percent of civil cases were over three (3) years old. *See* Judicial Caseload Profile, *https://www.uscourts.gov/sites/default/files/data_ tables/fcms_na_distprofile0630.2020.pdf*, at 32. During the same period, the Northern District of California had Eight Hundred Seventy (870) pending cases per judge, and over thirteen (13) percent of its civil cases were over three (3) years old. *Id.* at 66.

This case is a localized controversy centered around Mississippi. Plaintiffs are located in Oxford, Mississippi, the defamatory statements were allegedly authored by employees of Corr Flight in Oxford, Mississippi, and the harm of Glassdoor's actions was felt in Oxford. No other court in the country has a stronger interest in adjudicating torts against an Oxford-based business than the court sitting in Oxford, Mississippi.

As to the law that will govern the case, Plaintiffs submit that Mississippi law is applicable to this diversity action, which asserts claims under Mississippi law. Therefore, factors three and four relating to familiarity with the appliable law and avoidance of choice-of-law and foreign law issues weigh against transfer. This Court is unquestionably more familiar with the law under which Plaintiffs' claims are brought, and having this Court apply Mississippi law would avoid the issue of a California court attempting to apply Mississippi law. The public interest factors do not weigh

17

in favor of transferring this matter, and the Court should retain jurisdiction over this localized controversy.

## III.    GLASSDOOR LLC IS NOT ENTITLED TO IMMUNITY FOR ITS TORTIOUS ACTIONS.

Glassdoor characterizes itself as a plain web host passively publishing content from others, in an attempt to hide behind the Communications Decency Act, 47 U.S.C. § 230 ("CDA" or "§ 230").  (Dkt. 23 at 22).  However, § 230 does not immunize Glassdoor from liability for content it created itself and/or helped create, and Glassdoor cannot distance itself from its own tortious conduct.

 Glassdoor's tortious conduct includes (1) prompting anonymous contributors to fill out pre-titled questionnaires that guided the anonymous contributors' defamatory speech and (2) receiving content from third parties that Glassdoor edited, interpreted, manipulated, and transformed into the Nicholas Air employer page to present the defamatory content.  (Dkt. 13 at ¶¶ 23–25, fn. 5).  Glassdoor's deliberate actions constitute the creation of defamatory and offensive internet content, not the mere republication of third parties' content.  "Where platforms take this content curation a step further, [as Glassdoor did,] so as to become content creations, they cannot be shielded from liability."  *Doe through Roe v. Snap, Inc.*, 2023 WL 8705665, at *3 (5th Cir. Dec. 18, 2023) (Elrod, J., dissenting) (noting percolation in the Fifth Circuit to diminish § 230 immunity); *see also Malwarebytes, Inc. v. Enigma Software Grp. USA, LLC*, 141 S. Ct. 13, 15 (2020) (discussing the "too-common practice of reading extra immunity into statutes where it does not belong," including § 230).  This Court should not allow Glassdoor to escape liability for the content *it created* and then published on its website for profit.

Section  230 was enacted in the late 1990s to provide some immunity to internet platforms for civil and criminal claims based on content they did not create.  *Malwarebytes, Inc.*, 141 S. Ct.

at 13. It states that "[n]o provider or user of an interactive computer service shall be treated as the publisher or speaker of any information provided by another information content provider." 47 U.S.C. § 230(c)(1). This has resulted in some immunity for internet-based service providers for "claims stemming from their publication of information created by third parties[.]" *Doe v. MySpace, Inc.*, 538 F.3d 413, 418 (5th Cir. 2008). In other words, a website cannot be liable for content created *wholly* by a third party. But a website remains liable for content it contributed to in whole or in part as an "information content provider." 47 U.S.C. § 230(f)((3) (defining information content provider).

### A.    Glassdoor Created Defamatory Content.

Glassdoor is not entitled to immunity because it created or at least contributed to the defamatory content on its website regarding Plaintiffs. "To demonstrate that a service provider exceeded its traditional publisher role and thus forfeited CDA immunity, a plaintiff must . . . plausibly allege that the provider itself *authored or created* the content." *La'Tiejira v. Facebook*, 272 F. Supp. 3d 981, 994 (S.D. Tex. 2017); *see also Free Speech Coal., Inc. v. Colmenero*, 2023 WL 5655712, at *27 (W.D. Tex. Aug. 31, 2023) ("To the extent that the [websites] create or develop the content they themselves post, they are not entitled to immunity.") .

Plaintiffs have asserted sufficient action by Glassdoor to remove any claimed immunity for the defamatory content—including shaping the comments provided by the anonymous authors through prompts, and the creation of the employer page which includes graphs and a star rating system. Several courts have held that even slight manipulations or small creative acts on the part of the website precludes § 230 immunity. *See MCW, Inc. v. Badbusinessbureau.com, L.L.C.*, 2004 WL 833595, at *10 (N.D. Tex. Apr. 19, 2004) (development of titles and headings removes immunity from website provider); *see also Perkins v. LinkedIn Corp.*, 53 F. Supp. 3d 1222, 1247

(N.D. Cal. 2014) (defendant not entitled to immunity when it made simple content creation decisions such as including a photo in published content and deciding how often to publish the content); *Fraley v. Facebook, Inc.*, 830 F. Supp. 2d 785, 802–03 (N.D. Cal. 2011) (defendant not entitled to immunity for actions such as grouping content provided from third parties in a particular way and combining photographs or logos with text). Glassdoor's content-creation decisions to prompt third-party content through its pre-titled questionnaire and the development and presentation of the information on the Nicholas Air employer page that Glassdoor created precludes § 230 immunity.

Based on its active role in creating the content on its website, Glassdoor is not immune under § 230 as an "interactive service provider." But even if Glassdoor had § 230 immunity as to third party content, being an interactive service provider does not mean that it cannot *also* function as a "content provider" for its own creations. *Fraley*, 830 F. Supp. 2d at 802 (plaintiffs' allegations showed that Facebook was "a content provider, in addition to being an interactive computer service provider"). Therefore, Glassdoor remains liable for content it created and participated in creating—which includes the defamatory reviews and Nicholas Air's employer page on its website.

### B. Glassdoor's Authority for Immunity is not Persuasive.

Glassdoor's authority to the contrary is neither binding nor dispositive. First, Glassdoor points to *Courtney v. Vereb*, 2012 WL 2405313 (E.D. La. June 25, 2012). In *Courtney*, the district court granted immunity to the website Angie's List because it was "not solely responsible for creating the content complained of[.]" *Id*. at *6. However, the standard applied by that court is contrary to the language of the statute and should not be enforced. Section 230 defines "information content provider" as "any person or entity that is responsible, in whole *or in part*, for

20

the creation or development of information provided through the Internet or any other interactive computer service." 47 U.S.C. § 230(f)(3) (emphasis supplied). The statute is plain that Glassdoor need not create all of the content, only part, to be held liable as an "information content provider," and the Court should decline to follow the improper standard applied in *Courtney*.

Second, Glassdoor cites *Prickett v. InfoUSA, Inc.*, 561 F. Supp. 2d 646 (E.D. Tex. 2006) accompanied by a parenthetical that the "Defendant did not play a significant role in creating or developing the information at issue." (Dkt. 23 at 17). In *Prickett*, the plaintiffs' home address and personal information were maliciously included in a database that was compiled by the defendant. *Id*. at 647–48. The district court reasoned that critically the "information concerning the Plaintiffs' names, address, and home telephone number as well as the alleged business names were transferred unaltered" by the defendant. *Id*. Because InfoUSA did not alter the content or develop false or harassing content, it was entitled to § 230 immunity.

Glassdoor's actions are not analogous to the *Prickett* case. The defamatory and hateful comments posted on its website regarding Nicholas Air are steered and informed by the pre-titled questionnaire mandated by Glassdoor. Glassdoor also received defamatory content from anonymous users, complied and manipulated that content, and then created the Nicholas Air employer page—the content of which was not "transferred unaltered." The employer page is created by Glassdoor with star ratings, graphs, and advertisements to submit further anonymous reviews regarding Nicholas Air. (*See* Dkt. 13-3). Such content creation goes beyond the mundane transfer of data discussed in *Prickett*.

Lastly, Glassdoor references a twenty (20) year old case from the Ninth Circuit—*Carafano v. Metrosplace.com, Inc.*, 339 F.3d 1119 (9th Cir. 2003). In *Carafano*, like *Prickett*, the plaintiff's personal information was fraudulently shared on matchmaker.com. *Id*. at 1121. The Ninth Circuit

stated that the website had "directly reproduced" the content and therefore held that the defendant was immune from suit under Section 230 because it "did not play a significant role in creating, developing, or 'transforming' the relevant information." *Id.*

But here, the Plaintiffs represent in their First Amended Complaint that "GlassDoor authored and created" content on Nicholas Air's employer page on the website, and forced contributors to use its pre-titled questionnaire. (Dkt. 13 at ¶¶ 24–25). These actions are not equivalent to the direct reproduction of content discussed in *Carafano*, and *Carafano* is not comparable to the facts of this case.

## IV.   GLASSDOOR COMMITTED TORTS IN MISSISSIPPI.

### A.   Legal Standard for Rule 12(b)(6).

Under Federal Rule of Civil Procedure 12(b)(6), the Court must accept all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff. *In re Katrina Canal Breaches Litigation,* 495 F.3d 191, 205 (5th Cir. 2007). The Court must evaluate Rule 12(b)(6) arguments in light of Rule 8(a)(2), which requires at the pleading stage only "a short and plain statement of the claim showing that the pleader is entitled to relief." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555 (2007). Accordingly, Rule 12(b)(6) motions to dismiss are "viewed with disfavor" and "rarely granted." *Brown v. Phoenix Life Ins. Co.,* 843 F. App'x 533, 538–39 (5th Cir. 2021).

To survive a Rule 12(b)(6) motion, a complaint must contain sufficient factual matter, accepted as true, to "state a claim for relief that is plausible on its face." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (citing *Twombly,* 550 U.S. at 570). The pleaded allegations should allow the Court to draw a reasonable inference that the defendant is liable for the misconduct alleged, but this inference is "not akin to a probability requirement," *Iqbal,* 556 U.S. at 678, and the choice

between two plausible inferences should not be made at the pleading stage. *Todd v. Exxon Corp.,* 275 F.3d 191, 203 (2d Cir. 2001). Questions of fact cannot be resolved under Rule 12(b)(6). *Id.*

### B. Plaintiffs State a Claim for Defamation (Count One).

Under Mississippi law, "[a]ny written or printed language which tends to injure one's reputation, and thereby expose him to public hatred, contempt or ridicule, degrade him in society, lessen him in the public esteem or lower him in the confidence of the community is actionable per se[.]" *Chatham v. Gulf Pub. Co., Inc.*, 502 So. 2d 647, 650 (Miss. 1987) (citation and internal quotation marks omitted). Establishing a defamation claim requires:

(1) a false and defamatory statement concerning another;
(2) an unprivileged publication to a third party;
(3) fault amounting at least to negligence on the part of the publisher; and
(4) either actionability of the statement irrespective of special harm or the existence of special harm caused by the publication.

*Chatham v. Gulf Pub. Co., Inc.*, 502 So. 2d 647, 649 (Miss. 1987) (citing *Restatement (Second) of Torts*, § 558). On the final element, "[s]pecial harm is the loss of something having economic or pecuniary value." *Speed v. Scott*, 787 So. 2d 626, 632 (Miss. 2001) (citation and internal quotation marks omitted). Special harm need not be shown for "words imputing a want of integrity or capacity . . . in the conduct of a profession, trade, or business." *Id.*

Plaintiffs' assertions in the First Amended Complaint establish each element required for its defamation claim. As stated by Plaintiffs, Glassdoor contributed to the creation of false and defamatory statements about Plaintiffs (Element 1) and published those statements to third parties through its website (Element 2). It further refused to remove the defamatory posts upon Plaintiffs' notification and request, amounting to *at least* negligence (Element 3). As Plaintiffs' claims arise from defamatory statements imputing a lack of integrity in the conduct of their business, no special

23

harm is required to establish their claim. However, as asserted in the First Amended Complaint, Plaintiffs have suffered special harm, through economic harm to their business (Element 4).

Glassdoor contends that Plaintiffs' defamation claim fails because they did not reproduce the Does' defamatory statements in their First Amended Complaint. (Dkt. 23 at 26-27). This contention can be dispensed with quickly. Plaintiffs provided not just the nature of the defamatory statements, but attached the actual reviews as Exhibit A to the First Amended Complaint. (Dkt. 13-1). The purpose of requiring a plaintiff to set forth the substance of the defamatory statements (paraphrased or verbatim) is to provide the defendant with "notice of the nature of the complained-of statements." *See Brune v. Takeda Pharms. U.S.A., Inc.*, 2019 WL 3323511, at *8 (S.D. Miss. Jul. 24, 2019) (citation and internal quotation marks omitted). Here, Glassdoor cannot claim a lack of notice. Nor does it point to any authority for the notion that the defamatory statements must be placed in the body of the complaint rather than in an exhibit thereto.

Glassdoor next argues that the Does' suggestion that they worked for Nicholas Air was not defamatory. (Dkt. 24 at 27). This argument is also meritless. While Plaintiffs do state it is false that Nicholas Air employed the reviews' authors, (Dkt. 13 at ¶ 29), it is clear in the context of the First Amended Complaint that such representations are not the basis for Plaintiffs' defamation claim.

Finally, Glassdoor distorts Plaintiffs' assertions to suggest that Glassdoor's liability is solely premised on its rating system and questionnaire, which it argues are not on their own defamatory. (Dkt. 23 at 29). As previously discussed (and as asserted in the First Amended Complaint), Glassdoor did not merely create a neutral rating system and questionnaire. It played an active role in the creation and publication of content that defamed Plaintiffs. It then continuously refused to remove the defamatory reviews, which evidences negligence, gross

24

negligence, or actual malice. Plaintiffs have adequately pled their claim against Glassdoor for defamation.

### C. Plaintiffs State a Claim for Tortious Interference with Business Relations (Count Two).

"There are four elements necessary to prove a claim of tortious interference with a business relationship: (1) The acts were intentional and willful; (2) The acts were calculated to cause damage to the plaintiffs in their lawful business; (3) The acts were done with the unlawful purpose of causing damage and loss, without right or justifiable cause on the part of the defendant (which constitutes malice); (4) Actual damage and loss resulted." *Biglane v. Under the Hill Corp.*, 949 So. 2d 9, 15-16 (Miss. 2007). Plaintiffs' First Amended Complaint sufficiently pleads each element. Additionally, Glassdoor does not challenge the first two elements, that its acts were intentional and willful, and that they were calculated to damage Plaintiffs' lawful business. (*See* Dkt. 23 at 29-31).

As with the defamation claim, Glassdoor claims that Plaintiffs failed to identify the statements that interfere with business relationships. (Dkt. 23 at 30). As discussed above, this is incorrect. Glassdoor's argument that Plaintiffs did not identify the timeframe of the interference, (*id.*), is likewise disingenuous, as the reviews are dated. (*See* Dkt. 13-1). Further, the negative reviews and company profile have impacted Plaintiffs' business relationships with Corr Flight's current employees and have deterred job candidates from accepting employment. *See* Ex. D to Pls' Response, Affidavit of Peder von Harten; *see also* Ex. E to Pls' Response, Affidavit of Fernando Pineda.

As to malice, Glassdoor essentially argues that because it had no specific reason to target Plaintiffs in particular with their tortious acts, it could not have acted maliciously toward Plaintiffs. On the contrary, their acts toward Plaintiffs were "done with the unlawful purpose of causing

damage and loss, without right or justifiable cause," as that is Glassdoor's entire business model. The fact that they acted the same way toward other businesses is irrelevant to the analysis. Plaintiffs have adequately pled their claim for tortious interference with business relations.

**D.    Plaintiffs State a Claim for Tortious Interference with Contracts (Count Three).**

The elements of a claim for tortious interference with contracts are identical to the elements for tortious interference with business relations.  *Superior MRI Servs., Inc. v. Alliance Healthcare Servs., Inc.*, 2014 WL 272459, at *4 (N.D. Miss. Jan. 24, 2014).  Glassdoor's arguments for dismissal of this count are the same as those raised for the previous count. They fail here as well— particularly in light of Glassdoor's engagement with Corr Flight employees, which has caused the Doe defendants to breach their employment contracts.

<u>CONCLUSION</u>

Glassdoor has thrown many arguments against the wall in an attempt to defend its actions and avoid the jurisdiction of this Court, but none of its arguments stick.  The Court should deny Glassdoor's motion to dismiss or transfer venue for the numerous reasons set forth above.

RESPECTFULLY SUBMITTED, this the 25th day of January, 2024.

**NICHOLAS SERVICES, LLC
d/b/a NICHOLAS AIR, and
CORR FLIGHT S., INC.** *Plaintiffs*

*/s/ Edwin S. Gault, Jr.*
Edwin S. Gault, Jr. (MSB #10187)
Molly H. McNair (MSB #105706)
210 E. Capitol Street, Suite 2200
Jackson, MS 39201
Phone: 601-960-8600
win.gault@formanwatkins.com
molly.mcnair@formanwatkins.com

Hannah Katherine Herrin
Internal Counsel
NICHOLAS AIR®
Direct: 662.212.5124
Email: hherrin@nicholasair.com
***Attorneys for Plaintiffs***