**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF MISSISSIPPI**
**OXFORD DIVISION**

| | |
|---|---|
| NICHOLAS SERVICES, LLC<br>D/B/A NICHOLAS AIR and<br>CORR FLIGHT S., INC.,<br><br>      Plaintiffs,<br><br>      v.<br><br>GLASSDOOR, LLC and<br>JOHN AND JANE DOE(S) 1-30,<br><br>      Defendants. | Civil Action No. 3:23cv448-MPM-RP |

**REPLY IN SUPPORT OF DEFENDANT GLASSDOOR LLC'S**
**MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT, OR,**
**IN THE ALTERNATIVE, TO TRANSFER**
**THIS ACTION TO THE NORTHERN DISTRICT OF CALIFORNIA**

**TABLE OF CONTENTS**

| | |
|---|---:|
| INTRODUCTION | 1 |
| ARGUMENT | 1 |
| I. THE COURT LACKS PERSONAL JURIDICTION OVER GLASSDOOR | 1 |
| II. ALTERNATIVELY, THIS ACTION SHOULD BE TRANSFERRED | 2 |
|     A. The TOU's Forum Selection Clause Is Enforceable | 2 |
|     B. Corr Is also Bound by the Forum Selection Clause | 5 |
|         1. Corr is bound by the TOU under a direct-benefit estoppel theory | 5 |
|         2. Corr is bound by the TOU under an agency theory | 6 |
|     C. The Section 1404(a) Factors Dictate that this Case Should Be Transferred to the Northern District of California | 6 |
| III. THE FAC FAILS TO STATE A CLAIM AGAINST GLASSDOOR | 7 |
|     A. Plaintiffs' Claims Against Glassdoor Are Precluded by 47 U.S.C. § 230 | 7 |
|     B. Plaintiffs Fail to State a Claim Under Mississippi Law | 8 |
|         1. Defamation | 8 |
|         2. Tortious interference with business relations/contracts | 9 |

# **TABLE OF AUTHORITIES**

|  | Page(s) |
|---|---|
| *Brune v. Takeda Pharms. U.S.A., Inc.*, No. 1:18CV298-LG-RHW, 2019 WL 6311991 (S.D. Miss. Nov. 25, 2019) | 8-9 |
| *Calder v. Jones*, 465 U.S. 783 (1984) | 2 |
| *CECA, LLC v. Metal Impact South, LLC*, No. 3:19-cv-00010-GHD-RP, 2019 WL 1271016 (N.D. Miss. Mar. 19, 2019) | 7 |
| *Claimserviceprovider, Inc. v. St. Paul Travelers Cos.*, No. 06-2475, 2006 WL 2989240 (E.D. La. Oct. 18, 2006) | 6 |
| *Dalon v. Ruleville Nursing & Rehab. Ctr., LLC*, 161 F. Supp. 3d 406 (N.D. Miss. 2016) | 4 |
| *East Ford, Inc. v. Taylor*, 826 So.2d 709 (Miss. 2002) | 3 |
| *Fraley v. Facebook, Inc.*, 830 F. Supp. 2d 785 (N.D. Cal. 2011) | 8 |
| *Haynsworth v. The Corp.*, 121 F.3d 956 (5th Cir. 1997) | 3 |
| *Johnson v. TheHuffingtonPost.com, Inc.*, 21 F.4th 314 (5th Cir. 2021) | 1 |
| *MCW, Inc. v. Badbusinessbureau.com*, No. 3:02-CV-2727-G, 2004 WL 833595 (N.D. Tex. Apr. 19, 2004) | 8 |
| *Mount Carmel Ministries v. Seaway Bank & Trust Co.*, No. 2:14-CV-184-KS-MTP, 2015 WL 13375901 (S.D. Miss. Sept. 3, 2015) | 5 |
| *Noble Drilling Servs., Inc. v. Certex USA, Inc.*, 620 F.3d 469 (5th Cir. 2010) | 6 |
| *Patton v. United Parcel Serv., Inc.*, 910 F. Supp. 1250 (S.D. Tex. 1995) | 2 |
| *Perkins v. LinkedIn Corp.*, 53 F. Supp. 3d 1222 (N.D. Cal. 2014) | 8 |
| *Pittman v. Joe K. Pittman Co.*, No. 2:15-CV-114-KS-MTP, 2016 WL 1050299 (S.D. Miss. Mar. 16, 2016) | 3 |
| *R.W. Dists., Inc. v. Am. Honda Motor Co.*, No. 3:17CV810-LG-LRA, 2018 WL 6173584 (S.D. Miss. Mar. 15, 2018) | 3 |
| *Sgic Strategic Global Inv. Capital, Inc. v. Burger King Eur. GmbH*, No. 3:14-CV-3300-B, 2015 WL 12731761 (N.D. Tex. Aug. 26, 2015) | 5 |

*Song fi, Inc. v. Google Inc.*, 72 F. Supp. 3d 53 (D.D.C. 2014) ..... 4

*TDK Accounting & Tax Servs., LLC v. JPMorgan Chase Bank, N.A.*, No. 3:09cv563-DPJ-FKB, 2010 WL 1416209 (S.D. Miss. Apr. 7, 2010) ..... 4

*Tylertown Farm Supply, LLC v. ODES UTVS, LLC*, No. 2:16-CV-62-KS-MTP, 2016 WL 11668678 (S.D. Miss. Jul. 28, 2016) ..... 7

*Walker v. Nautilus, Inc.*, 541 F. Supp. 3d 836 (S.D. Ohio 2021) ..... 4

*Warren v. Fed. Nat'l. Mortgage Ass'n.*, 932 F.3d 378 (5th Cir. 2019) ..... 2

**INTRODUCTION**

Apparently unable to find a basis for avoiding a dismissal or transfer based on the First Amended Complaint's ("FAC") allegations, Plaintiffs resort to making claims, for the first time in their briefing, about Glassdoor's supposed "business model" and "creation of defamatory content" that find no support in the FAC or Plaintiffs' evidence. The parties' written agreement plainly requires this dispute to be litigated in California and is not unconscionable. In any case, Plaintiffs cannot avoid 47 U.S.C. § 230 immunity, or state a tort claim under Mississippi law, based solely on Glassdoor's website's use of a "questionnaire" and "rating system" into which third-party users enter data, and the FAC does not attribute any other conduct to Glassdoor.

**ARGUMENT**

**I.    THE COURT LACKS PERSONAL JURISDICTION OVER GLASSDOOR**

Plaintiffs claim that, as Glassdoor's site (the "Site") is "interactive," it "can create the minimum contacts required by due process, and did so for purposes of Plaintiffs' claims." (Opp'n. to Mot. to Dismiss, Jan. 25, 2024, Dkt. No. 33 ("Opp'n."), at 8.) But "interactivity" is merely a "prerequisite to [the] standard jurisdictional inquiry," and "just because a site *can* exploit a forum does not mean that it *has* or that its forum contacts produced the plaintiff's claim." *Johnson v. TheHuffingtonPost.com, Inc.*, 21 F.4th 314, 319 (5th Cir. 2021). Plaintiffs next assert that "the relevant content of Glassdoor's website was specifically targeted at Mississippi" because "at least three (3) of the reviews specifically indicate the location of the alleged employment as Oxford, Mississippi" (Opp'n. at 8) — referring to the fact that, under the titles of three of the ten Reviews, a grey label saying "Oxford, MS" appears (FAC Exh. A, at 2-3) — and "the brunt of the harm" was "suffered by Plaintiffs in Mississippi" (Opp'n. at 10). Plaintiffs' sole authority for their position that this creates the minimum contacts necessary for

1

personal jurisdiction, *Calder v. Jones*, 465 U.S. 783 (1984) (Opp'n. at 8), is plainly inapposite. There, "[t]he allegedly libelous story concerned the California activities of a California resident" who, due to the story, suffered "emotional distress and . . . injury to her professional reputation." *Calder*, 465 U.S. at 788. In contrast, the employer reviews at issue (the "Reviews") say nothing about Plaintiffs' activities specifically in Mississippi. The mere fact that "Oxford, MS" appears in the header of three Reviews does not show that the conduct alleged in the Reviews took place in this state. Moreover, Plaintiffs' purported evidence that they suffered harm in Mississippi is not admissible. Plaintiffs' supporting declarations rely on alleged, hearsay statements by job applicants to Nicholas's employees (Opp'n. Exh. D, ¶¶ 4, 5; *id.* Exh. E, ¶¶ 5, 6), followed by the conclusory claim that "[t]he negative and defamatory reviews . . . are interfering with business operations by making it more difficult to hire qualified personnel" (*id.* Exh. D, ¶ 6; *id.* Exh. E, ¶ 7). *See Patton v. United Parcel Serv., Inc.*, 910 F. Supp. 1250, 1274 (S.D. Tex. 1995) ("Although [plaintiff] alleges that friends at [defendants] have told him that they had heard" defamatory statements, "hearsay is inadmissible to support [plaintiff's] . . . slander claim"); *Warren v. Fed. Nat'l. Mortgage Ass'n.*, 932 F.3d 378, 388 (5th Cir. 2019) (in defamation action, district court properly excluded allegation in declaration setting forth witness's "'belief' [that defendant's] investigators had poor reputations for truthfulness," as it was "merely conclusory").

II.     ALTERNATIVELY, THIS ACTION SHOULD BE TRANSFERRED

    A. The TOU's Forum Selection Clause Is Enforceable

Plaintiffs do not dispute that Nicholas agreed to the Site's Terms of Use ("TOU"), or that the TOU contain a forum selection clause requiring this action to be brought in California. Instead, Plaintiffs say the clause is unconscionable because "the terms were unnegotiable, Glassdoor . . . refused to let Nicholas Air respond to the defamation until Nicholas Air accepted

the forum-selection clause, and Nicholas Air could not contract with another party because Glassdoor controls the defamatory statements on its websites [sic]." (Opp'n. at 13.) Plaintiffs ignore extensive authority (Mem. in Supp. of Mot. to Dismiss, Jan. 5, 2024, Dkt. No. 23 ("Def.'s Mem."), at 10-11) holding that "[f]raud and overreaching must be *specific to a forum selection clause* in order to invalidate it." *Haynsworth v. The Corp.*, 121 F.3d 956, 963 (5th Cir. 1997) (emphasis added). The FAC makes no mention of the clause, and only discusses the TOU in general terms. (FAC ¶ 19.) Thus, "argu[ing]," as Plaintiffs do, "that [the TOU amounted to] a 'take it or leave it' contract," without "contend[ing] that the forum selection clause alone is invalid and therefore unenforceable," is "inapposite to our [forum-selection clause] enforceability determination . . . ." *R.W. Dists., Inc. v. Am. Honda Motor Co.*, No. 3:17CV810-LG-LRA, 2018 WL 6173584, *2 (S.D. Miss. Mar. 15, 2018).

Even if Plaintiffs' claim that the TOU, as a whole, are a "contract of adhesion" is relevant, it does not establish unconscionability. A "contract of adhesion," *i.e.*, one "drafted unilaterally by the dominant party and then presented on a 'take-it-or-leave-it' basis to the weaker party," is "not automatically void." *Pittman v. Joe K. Pittman Co.*, No. 2:15-CV-114-KS-MTP, 2016 WL 1050299, *4 (S.D. Miss. Mar. 16, 2016) (quoting *East Ford, Inc. v. Taylor*, 826 So.2d 709, 716 (Miss. 2002)). Instead, Plaintiffs must show they were "prevented by market facts, timing or other pressures from being able to contract with another party on more favorable terms or to refrain from contracting at all." *East Ford, Inc.*, 826 So.2d at 716. Plaintiffs say they meet this requirement because they could not "respond to the defamation until Nicholas Air accepted the forum-selection clause" (Opp'n. at 13) — *i.e.*, that Glassdoor would not let Plaintiffs write a response to the Reviews unless Plaintiffs agreed to the TOU. But Plaintiffs' suggestion that their only way to seek redress for the Reviews was to respond to them *on*

3

*Glassdoor's website* is plainly incorrect. Plaintiffs could have used any number of other websites or channels of internet communication to respond to the Reviews. *See, e.g., Song fi, Inc. v. Google Inc.*, 72 F. Supp. 3d 53, 62 (D.D.C. 2014) (while "Plaintiffs argue that YouTube has 'overwhelming power in its chosen market' and that [plaintiff], as a 'small, independent music compan[y],' had no choice but to accept [YouTube's] Terms of Service," plaintiffs could have uploaded their video "on various other file-sharing websites"). Another of Plaintiffs' options was to, as they did, sue the Reviews' authors for defamation.

Finally, none of Plaintiffs' authorities (Opp'n. at 13) supports their position. *Dalon v. Ruleville Nursing & Rehab. Ctr., LLC*, 161 F. Supp. 3d 406 (N.D. Miss. 2016), held the plaintiff, whose decedent signed an agreement with an arbitration clause while a "patient at Defendant's nursing home facility," set forth grounds for a hearing on whether the agreement was unconscionable, as the decedent "was suffering from serious medical issues and . . . there were 'few if any similar facilities that could care for' her." *Id.* at 410, 417. The situation of Plaintiffs — business entities that run a "private jet company" (FAC ¶ 1) and have offered no evidence that they lacked avenues of redress for the purported defamation besides responding on the Site — is hardly comparable. *See TDK Accounting & Tax Servs., LLC v. JPMorgan Chase Bank, N.A.*, No. 3:09cv563-DPJ-FKB, 2010 WL 1416209, *3 (S.D. Miss. Apr. 7, 2010) (rejecting argument that forum selection clause was unconscionable because, *inter alia*, plaintiff "is not an individual consumer, it is an accounting firm and a sophisticated business"). Similarly, *Walker v. Nautilus, Inc.*, 541 F. Supp. 3d 836 (S.D. Ohio 2021), held an arbitration clause was unconscionable, as the defendant "did not explain the arbitration provision to [plaintiff] or require [plaintiff] to view the agreement," and "[t]he . . . provision requires consumers to arbitrate in Clark County, Washington" and "split any costs and fees." *Id.* at 843. Here, Plaintiffs do not claim they did

not read or understand the TOU, or that litigating in California would be prohibitively costly. Finally, in *Mount Carmel Ministries v. Seaway Bank & Trust Co.*, No. 2:14-CV-184-KS-MTP, 2015 WL 13375901 (S.D. Miss. Sept. 3, 2015), the court held the forum selection clause at issue *was* enforceable "even if the contracts are 'contracts of adhesion.'" *Id.* at *2.

### B. Corr Is also Bound by the Forum Selection Clause

#### 1. Corr is bound by the TOU under a direct-benefit estoppel theory

Plaintiffs insist that "there is no evidence that Corr Flight embraced or benefited from an agreement signed by Nicholas Air." (Opp'n. at 14.) This contradicts Plaintiffs' claims that Nicholas was "without any other way to defend itself" against the Reviews apart from "'claiming' a Glassdoor-created employer account." (*Id.* at 3.) If the only way for Nicholas to "defend itself" was to sign the TOU, Nicholas plainly "benefited" from doing so — and thus Corr, being the only plaintiff with any employees, and hence the only plaintiff capable of responding to the Reviews on the Site (FAC ¶¶ 1, 2, 14) — did as well. Plaintiffs next assert that "Corr Flight is not suing to enforce the TOU." (Opp'n. at 14.) That is true, but irrelevant. "[N]on-signatories . . . can be bound by [a] forum selection clause" where they "'have embraced the contract despite their non-signatory status,'" and they "can 'embrace' a contract . . . (1) by knowingly seeking and obtaining 'direct benefits' from that contract; *or* (2) by . . . asserting claims that must be determined by reference to that contract." *Sgic Strategic Global Inv. Capital, Inc. v. Burger King Eur. GmbH*, No. 3:14-CV-3300-B, 2015 WL 12731761, *11 (N.D. Tex. Aug. 26, 2015). In other words, the fact that Corr "obtained 'direct benefits'" from Nicholas's execution of the TOU establishes direct-benefit estoppel, regardless of whether Corr's claims arise under the TOU. *See id.* (direct-benefit estoppel applied, as "[p]laintiffs . . . benefitted from Defendant's performance under the franchise agreements" and "had a stake in"

5

entities that signed agreements). Finally, Plaintiffs say *Noble Drilling Servs., Inc. v. Certex USA, Inc.*, 620 F.3d 469 (5th Cir. 2010), "declin[ed] to apply direct-benefit estoppel when plaintiff's claims could be determined without reference to the agreements." (Opp'n. at 14-15.) In fact, that case stated that, while direct-benefit estoppel *can* apply where, as here, "the non-signatory knowingly . . . obtains a direct benefit from that contract," it did not apply in that case, as the plaintiff "did not have any knowledge of the" agreements "necessary to support the 'knowingly exploited' theory of direct benefits estoppel." *Noble Drilling Servs.*, 620 F.3d at 474.

### 2. Corr is bound by the TOU under an agency theory

Plaintiffs claim there is "no evidence that Nicholas Air acted as Corr Flight's agent" (Opp'n. at 15), but again neglect their allegations that Nicholas is just a "brand name" used by Corr, and "Corr Flight is the employer for all employees who perform duties for the Nicholas Air brand." (FAC ¶¶ 2, 14.) Thus, anyone purporting to act on behalf of Nicholas necessarily acted on Corr's behalf as well. *See, e.g., Claimserviceprovider, Inc. v. St. Paul Travelers Cos.*, No. 06-2475, 2006 WL 2989240, *8 (E.D. La. Oct. 18, 2006) (as plaintiff's complaint alleged "NCA Group and ICS worked under the . . . authority and direction . . . of St. Paul," "there is sufficient evidence of agency between St. Paul and NCA/ICS such that St. Paul is bound by the forum selection clause despite its nonsignatory status").

### C. The Section 1404(a) Factors Dictate that this Case Should Be Transferred to the Northern District of California

Plaintiffs claim the public-interest factors weigh against transfer because, in June 2020, the Court had fewer pending cases than the Northern District of California ("NDCA"), and 13% of cases in the NDCA were more than 3 years old compared to this District's 2%. (Opp'n. at 17.) The link Plaintiffs provide to support this claim does not work (Exh. 1 - Decl. of William J. Frimel, Feb. 6, 2024, ¶ 2 & Exh. 1(A) to Frimel Decl. (URL Page)), but in any event, the

6

existence of more pending cases in the NDCA is no surprise, given California's population of nearly 39 million, as opposed to Mississippi's of roughly 3 million (*id.* ¶ 4 & Exh. 1(B) to Frimel Decl. (Res. Pop. for U.S.)). *See CECA, LLC v. Metal Impact South, LLC*, No. 3:19-cv-00010-GHD-RP, 2019 WL 1271016, *3 (N.D. Miss. Mar. 19, 2019) (that "the Northern District of Mississippi hears fewer cases than the Northern District of Illinois" is unremarkable, as "[a]lmost as many people live in Chicago proper as in the entire state of Mississippi"). Plaintiffs next claim this is a "localized controversy centered around Mississippi" because they are located and supposedly suffered harm here. (Opp'n. at 17.) But the mere fact that this case "involves a Mississippi citizen" does not weigh against a transfer, as "California has a similar interest insofar as" Glassdoor is a "citizen[] of California." *Tylertown Farm Supply, LLC v. ODES UTVS, LLC*, No. 2:16-CV-62-KS-MTP, 2016 WL 11668678, *5 (S.D. Miss. Jul. 28, 2016). Finally, Plaintiffs claim Mississippi law applies to this action, but ignore their agreement, in the TOU, that California law applies. (Decl. of Annie Khalid, Dkt. No. 22-1, Exh. B, ¶ 12.2.5.)

### III. THE FAC FAILS TO STATE A CLAIM AGAINST GLASSDOOR

#### A. Plaintiffs' Claims Against Glassdoor Are Precluded by 47 U.S.C. § 230

Plaintiffs claim 47 U.S.C. § 230(c)(1) does not preclude their claims because Glassdoor "prompt[s] anonymous contributors to fill out pre-titled questionnaires that guide[] the anonymous contributors' defamatory speech," and "edited, interpreted, manipulated and transformed" the Reviews by putting them on the "Nicholas Air employer page" of the Site. (Opp'n. at 18.) But the FAC is devoid of allegations explaining how Glassdoor's mere use of a "questionnaire," or its placement of reviews of Nicholas on a webpage specific to Nicholas, somehow "edited," "guided" or "transformed" the Reviews' content in a manner depriving Glassdoor of Section 230(c)(1) immunity. Moreover, Plaintiffs' authorities (Opp'n. at 19-20)

lend no support to their position.  In *MCW, Inc. v. Badbusinessbureau.com*, No. 3:02-CV-2727-G, 2004 WL 833595 (N.D. Tex. Apr. 19, 2004), the defendant website did not qualify for Section 230 immunity because it "create[d] report titles such as 'Con Artists,' 'Scam,' and 'Ripoff,'" and "organize[d] the reports under headings such as 'Con Artists' and 'Corrupt Companies,'" which were allegedly defamatory.  *Id.* at *9 & n.10.  Here, the FAC identifies no defamatory "titles" or "headings" created by Glassdoor.  The plaintiffs in *Perkins v. LinkedIn Corp.*, 53 F. Supp. 3d 1222 (N.D. Cal. 2014), alleged that, "without Plaintiffs' consent," the defendant website "sent reminder emails," the "text, layout and design" of which the defendant created, "making use of Plaintiffs' names and likenesses" and "giv[ing] the impression that Plaintiffs were endorsing" the defendant.  *Id.* at 1247, 1249.  But the FAC does not point to any false claim by *Glassdoor* about Plaintiffs, or any unlawful use of their names and likenesses.  Similarly, in *Fraley v. Facebook, Inc.*, 830 F. Supp. 2d 785 (N.D. Cal. 2011), the plaintiffs alleged the defendant "takes Plaintiffs' names, photographs, and likenesses without their consent and uses this information to create new content that it publishes as endorsements of third-party products or services."  *Id.* at 801.  Again, the FAC makes no comparable allegations.

    **B.  Plaintiffs Fail to State a Claim Under Mississippi Law**

    **1.**    **Defamation.**  Plaintiffs take issue with Glassdoor's observation that the FAC failed to specify which statements are defamatory (Def.'s Mem. at 20-21), noting that Plaintiffs "attached the actual reviews" to the FAC (Opp'n. at 24).  But merely reproducing the Reviews does nothing to clarify *which* statements in them are allegedly false, or *why* they are false.  *See, e.g., Brune v. Takeda Pharms. U.S.A., Inc.,* No. 1:18CV298-LG-RHW, 2019 WL 6311991, *6-7 (S.D. Miss. Nov. 25, 2019) (although complaint recited contents of "field log entries and emails," "Defendants are left to guess which parts of these log entries and emails [plaintiff]

8

alleges to be defamatory," and thus "defamation claim remains deficient"). As to Glassdoor's contention that Plaintiffs fail to explain why Glassdoor's form "questionnaire" and "rating system" are false or damaging (Def.'s Mem. at 23), Plaintiffs urge that Glassdoor "played an active role" in creating additional "defamatory content" (Opp'n. at 24), but the FAC identifies no "content" created by Glassdoor apart from the questionnaire and rating system (FAC ¶¶ 24, 25).

2. **Tortious interference with business relations/contracts.** Plaintiffs claim they adequately identified which statements interfered with their business relationships, and/or contracts, by attaching the Reviews to the FAC (Opp'n. at 25), but as discussed, Plaintiffs are incorrect. Plaintiffs next dispute Glassdoor's supposed "argument that Plaintiffs did not identify the timeframe of the interference." (*Id.*) Plaintiffs mischaracterize Glassdoor's motion, which in fact noted that the FAC fails to "identify any *customers or business relationships* [Plaintiffs] allegedly lost due to the Reviews." (Def.'s Mem. at 24 (emphasis added).) Finally, as to Glassdoor's observation that Plaintiffs fail to identify any reason why Glassdoor would have intended to interfere with Plaintiffs' business relationships (*id.*), Plaintiffs assert that doing so "is Glassdoor's entire business model" (Opp'n. at 26). But the FAC nowhere discusses Glassdoor's "business model," or why and how it is supposedly intended to disrupt Plaintiffs' business.

Respectfully submitted,
GLASSDOOR LLC

/s/ William J. Frimel
WILLIAM J. FRIMEL, *Pro Hac Vice*
CHRISTOPHER R. EDGAR, *Pro Hac Vice*
SEUBERT FRENCH FRIMEL & WARNER LLP
1075 Curtis Street
Menlo Park, CA 94025
Tel: (650) 322-3048
bill@sfw-law.com
chris@sfw-law.com

/s/ Pope S. Mallette
POPE S. MALLETTE (MB NO.: 9836)
J. ANDREW MAULDIN (MB NO.: 104227)
MAYO MALETTE PLLC
2094 Old Taylor Road, Suite 200
Oxford, MS 38655
Tel: (662) 236-0055
pmallette@mayomallette.com
dmauldin@mayomallette.com